1822.
FRENCH<br>v.<br>SHOTWELL.

---

## FRENCH and others *against* SHOTWELL.

A judgment cannot be impeached, except for fraud, or its consideration inquired into; nor is the party, in whose favour a judgment has been entered up, bound to answer any inquiries in a bill filed by a subsequent purchaser, which go to impeach the consideration or validity of the judgment.

THIS cause came on to be heard on exceptions taken to the report of the master, allowing the exceptions taken to the answer of the defendant, accompanying the plea; and the further answer to the amended bill. (*Vide* Vol. V. p. 555.-569. S. C. and 20 *Johns. Rep.* 668. S. C. in error.)

*August 8th.*

*J. V. Henry*, for the plaintiffs.

*Slosson*, contra.

1822.

FRENCH
v.
SHOTWELL.

THE CHANCELLOR. This case comes before the Court upon exceptions to the master's report, allowing exceptions taken on the part of the plaintiffs to the answers of the defendant.

The first exception is, that the defendant has not set forth and discovered whether the 250 acres of land, in *Cosby's* manor, mentioned in the bill, were estimated at $35 per acre, or at what other sum; and, at that estimation, constituted a part of the consideration of the judgment in question; nor whether the defendant, on the 27th of *February*, 1813, (being the day of the date of the judgment,) or on the 15th of *April*, 1814, (being the day of the date of the articles of agreement, between the defendant and *Dirck Ten Broeck*, and set forth in the defendant's plea,) had any right or title to the said land; or whether he ever executed to *D. T. B.* any contract in writing therefor.

To understand more accurately the merits of the point arising upon this exception, we must look back to the pleadings.

The amended bill charges, that the judgment was not only fraudulent in its origin, but that it was kept on foot by fraud, and endeavoured to be enforced against the plaintiffs, by execution to the Sheriff of *Albany* county, fraudulently, as the judgment has been paid and satisfied; and particularly, that the 250 acres of land, in *Cosby's* manor, estimated at $35 an acre, constituted a part of the sum for which the judgment was confessed, viz. $8,750 out of the $10,000, the amount of the debt, besides costs; and that the defendant had no right or title to that land, and never executed to *D. T. B.* any contract, in writing, for the same, or any conveyance thereof, but on the contrary, the defendant, long after the entry of the judgment, was released and discharged by *D. T. B.* from all obligation to convey the land.

The defendant gives no further answer to this charge,

than to say, that by the agreement of the 15th of *April*,       1822.
1814, between the defendant and *D. T. B.*, he was to
deduct, and credit on the judgment, the sum of $5000,       FRENCH
and that he had levied on the *Saratoga* execution, $500,       v.
to be also credited; and that the residue of the judgment       SHOTWELL.
was due and unpaid.   And the defendant insisted on his
plea, and its accompanying answer, and the decree of
this Court, as protecting him from any further answer to
this charge.

This cause has been heard and reheard upon the plead-
ings, and by the decretal order of the 27th of *December*
last, it was declared and adjudged, that the plea, with
its answer, was good, as to all that part of the bill which
goes to impeach the consideration of the judgment, either
for usury, extortion, fraud, or other cause, alleged in the
bill; and that the defendant was to answer such parts of
the bill, not covered by the plea, as relates to fraud in the
sale in *Saratoga* county, or to any payments which may
have been made upon the judgment.

Is it not an inquiry into the consideration of the judg-
ment, and does it not go to impeach it, to ask the defend-
ant to disclose at what price those 250 acres of land were
estimated at, when they were taken into the account as a
part of the consideration?   Is it not still more pointedly
an impeachment of that consideration, to ask, whether the
defendant had any right, or pretence of right, or title to
those lands, or whether he had ever executed any contract
in writing for the same to *D. T. B.*, at the time they were
permitted to enter into the consideration of the judgment?
It appears very clear to my mind, that these inquiries can-
not be permitted under the decree which has been mention-
ed, and that if the exception was to be allowed, it would,
to every essential purpose, overrule the decree.

This charge, by way of amendment, is substantially a
repetition of a like charge in the bill, before it was amend-
ed; and the leave to amend was certainly not intended to

1822.

FRENCH
v.
SHOTWELL.

withdraw the protection of the plea from all similar charges.

We are to consider, in this suit, and for reasons which were given when the former decree was pronounced, that the judgment of the 27th of *February*, 1813, was good, originally, for the amount for which it was taken ; and the only lawful examination is, how far has it been subsequently satisfied by payments. It will not do to permit this rule and law of the case to be broken in upon and impaired by inquiries reaching back, and exploring the consideration of that judgment, and affecting the integrity and the validity of it, in any degree. If the principle upon which the decree of the 27th of *December* was founded, be sound, (and this is not the time nor the place to revise it,) it is much more important to the community that it should be preserved in all its force, than that even the frauds of the defendant should be detected in a way and by means which the rules of law do not permit. If I believed fully in the charges in the bill, it would still be my indispensable duty, under my impression of the principles of law, applicable to the case, to adhere steadily to those principles, and to close my mind against the influence of that belief. I have always been struck with the wisdom of the remark of Lord *Redesdale*, that " it is more important that an end should be put to litigation, than that justice should be done in every case ;" and with a similar remark of Chief Baron *Thompson*, that " the rules of practice were of infinitely more consequence than the particular question of property, (then depending in the Exchequer,) large as the amount was to the parties." We are, then, to see, how far the judgment, assuming it to be originally good, has been since actually paid, and the defendant is bound only to answer to inquiries concerning such subsequent payments. The articles of agreement, of the 15th of *April*, 1814, are to be considered as a new arrangement, unconnected with, and *unaffected by*, the original transactions,

upon which the judgment was founded.   We are not, in this case, to do indirectly what we cannot do directly.   We are not now to inquire, for any purpose, into the consideration of the judgment.   We are to assume it to have been full and perfect.

The agreement between the defendant and *D. Ten Broeck*, of the 15th of *April*, 1814, is stated at large in the plea, and, by that agreement, it appears, that the consideration of the judgment was, in part, a contract of the defendant, to release and convey to *D. T. B.*, 250 acres of land, in lot No. 75, in *Cosby's* manor, purchased by the defendant at a Sheriff's sale, and which release had not been executed, and that *D. T. B.*, in consideration of $1000, paid to him, and of $5000, to be credited, as paid upon the judgment, released the defendant from his contract to convey the land.   The counsel for the plaintiffs, not intending to impeach the judgment, or evade the doctrine of the decree, appears to have thought that the consideration for the release of the defendant from his contract to convey, must necessarily be *equal in amount* to the consideration originally allowed to the defendant for that contract, and that the whole of the original consideration must be credited on the judgment.   But there was no necessary connexion between the two agreements, standing upwards of a year apart from each other, in point of time.   The price of land is very fluctuating ; and a case may easily be supposed, in which the *entire* consideration of a judgment may be a parcel of land, and that in one year thereafter, that same land may be taken back for one half of the judgment, leaving the residue of the judgment standing good.   All this may be done in good faith ; for the price may have actually depreciated one half in that time, or the business and pursuits of the parties may have taken quite a different direction, so as to render it convenient to both parties to reconvey on those terms.   If the articles of agreement of 1814, were made in bad faith between the de-

fendant and *D. T. B.*, for the purpose of keeping the judg-ment on foot fraudulently, that is a distinct question, and it might possibly authorize an inquiry, under another state of things, into *the value of these lands to D. T. B.*, under the contract of the defendant. I say *possibly* ; for at present, I do not see very well who has a right to complain, if *D. T. B.* put no higher value on those lands than what he agreed to receive when he executed the release. He was the best judge of what they were worth to him, and the extent of his allowance of credit cannot be drawn into examination, without recurring back to the forbidden ground of the original consideration of the judgment ; and against this inquiry, the defendant is, and ought to be, protected by the decree. *Ten Broeck* is no party to this suit, and I see no reason why the plaintiffs should complain, if he has deemed it for his interest to release his claim to the 250 acres of land, for the five or the six thousand dollars, mentioned in the articles of agreement. The judgment is no further satisfied, in this respect, than to the extent of the credit he fairly agreed to allow. I am entirely convinced of the error of the master, in allowing this first exception, and I cannot but think, that much of the difficulty in the case, has arisen from not making a proper discrimination between the conclusions to be drawn under the assumption that the judgment was fair, and under the assumption that the judgment was fraudulent. Nothing, however, can be more obviously just, than that if the consideration of a judgment is not to be examined into, we are to give the judgment full force and effect in all its legal consequences ; and yet I perceive, that the bill, even in its amendments, perseveres in the charge of the original fraud.

The first exception to the further answer, instead of being allowed by the master, ought to have been overruled.

The second exception is, that the defendant hath not set forth in his answer the rents of the two lots, Nos. 13, and

22, in the *Saratoga* patent, in which he claimed an interest, and the particulars thereof, &c.

The master states, that as the defendant had undertaken to give a partial account of his interest in those rents, he was obliged to give a full account.

It appears by the answers, that on the 27th of *January*, 1816, the sheriff of *Saratoga* sold to the defendant, on execution, the two lots; and that, afterwards, on the 20th of *November*, 1817, the sheriff sold the same lots to others, under a prior judgment.

The defendant states, in his first answer put in, as auxiliary to his plea, that he had no interest in those lots, " except for rents previously becoming due," by which he means rents accruing during the twenty-two months that he owned the reversion. By the further answer, to the amended bill, he says, that he is not obliged to account touching the subsequent disposition of the premises, or for the rents. In this proposition he is certainly correct; and why, then should he go into a particular detail of those rents, especially as it is not made a charge in the bill, that he is liable to account for the rents? The rule referred to by the master, that having begun to answer, he must answer fully, does not apply. He did not answer at all as to the rents in the further answer. There was not, even in the first answer, any thing said of the rents, except incidentally; and there was nothing like the beginning of any explanation or account, or any partial answer in respect to them. It appears to me, therefore, that there was not any sufficient ground for the exception, and this second exception ought also to have been overruled.