Peck, J.
The plaintiff below was the surety of John Gold, in the judgment recovered against them by the plaintiff in error, but claims to be discharged from all liability thereon, and asks a perpetual injunction against its collection from him,
1. Because of the alleged agreement for stay of execution for sixty days, made, without his consent, by Gold and Woolworth, prior to and contemporaneous with the rendition of the judgment.
2. Because of the further agreement, made at the same time, *596 between them, and without his consent, by which Woolworth. was to receive payment of said judgment, in books, to be collected and delivered to him by Gold within sixty days thereafter.
3. Because of a subsequent agreement made between them,, and without his consent, by which Woolworth was to receive from Gold his notes, with» surety, at six and twelve months, in full satisfaction of said judgment, Woolworth thereby giving to Gold all of the month of February within which to procure said notes.
The judgment is still wholly unpaid; but it is claimed that Woolworth, by each and all said agreements, suspended his right to issue execution against Gold, the principal therein, during the several periods of time covered by said agreements, and that the surety in said judgment, not consenting thereto, is thereby discharged from all liability to pay the same. An agreement, to have this effect, must not only have been binding, as a contract, upon the judgment creditor, but also such as estops him from issuing an execution during the period prescribed, a.nd authorizes a court of equity, should occasion .require it, to enjoin its issuance, or direct its recall.
First, as to the agreement to stay execution.
This agreement is stated to have been made prior to and contemporaneous with the rendition of the judgment, and as an inducement to Gold to forego any defense; but it is not averred, nor is it pretended, that it was incorporated in the judgment, or entered upon the minutes of the court. The judgment, then, as shown by the record, carried with it an immediate right to execution to enforce its payment; and the first question is, whether any such averments or proo£ restricting the force and legal effect of a judgment, by matters transpiring before its rendition, and existing only in parol, can lay the foundation, at law or in equity, to prevent the issuance or procure the recall of an execution issued thereon within said period of sixty days. If it does not, it is clear that the plaintiff in error was not precluded, by such agreement, from issuing an execution upon the judgment at anytime during said period, even though he might thereby sub *597 ject himself to an action by Gold for damages. That the legal effect of a judgment can not be varied by proof, outside the record, of facts transpiring prior to its rendition, is a proposition too well settled to require the citation of authorities to sustain it; and it is apparent, also, that the effort is made, in this petition, thus to vary and restrict the legal effect of the judgment, in favor of the plaintiff in error, by abridging one of its legal and principal incidents. If such an agreement was made, it should have been incorporated in the judgment, or entered upon the minutes of the court; and in either event, the court would see it specifically performed. Sancey v. Littleljohn, 2 Hawk. (N. C.) 525; Clippinger v. Crops, 2 Watts’ Rep. 45. Where, however, it is not so entered upon the minutes, and is for a limited period only, it will not be specifically enforced, but the defendant will be left to his action upon the agreement. Fullam v. Valentine, 11 Pick. 160.
Sound policy, irrespective of the rights of parties, will not permit averments or proof, aliunde, of matters prior to the judgment, to lessen its force, obligation or effect, especially in collateral proceedings. (See remarks of Kent, Chancellor, in 6 Johns. Ch. 235.) And we can see no good reason why an agreement to stay execution, made prior to the rendition of a judgment, but not entered upon the record, affecting, as it does, the very life and vitality of the judgment, should form an exception to this salutary rule.
The agreement to receive payment in books, so far as it in•cludes a promise to stay execution, is obnoxious to the objection already considered — as an effort to restrict the legal effect of a judgment by proof outside the record,' of matters existing prior to its rendition, and which should, if true, have been incorporated in it. Stripped of this feature which sound policy excludes, it remains a mere agreement to receive payment in books within a specified time, if the defendant should de.sire to make such payment. There was no obligation on Gold to collect and deliver the books. The petition avers he was “ authorized,” i. e., privileged, to collect the books within sixty days, and bring them to Circleville, where Wool worth was *598 to receive them. Such a contract, would seem deficient in the mutuality necessary to constitute a valid agreement.
The agreement conferred no legal right to the books, upon "Woolworth, and a violation of it by Gold, imparted to Woolworth no rights additional or variant from those already created by the judgment; and, discarding the express agreement to stay execution, it is manifest, that the privilege given to Gold, was not intended by the parties to interfere with the continued right of Woolworth to enforce his judgment, if he chose to do so. At most, it was a collateral agreement, and even if accompanied by a parol stipulation to stay execution for a limited time, would not estop Woolworth from pursuing his remedies upon the judgment, though the agreement, if its performance had not been waived, might, possibly, have subjected Woolworth to an action. Perkins v. Gilman, 8 Pick. 229; Fullam v. Valentine, 11 Ib. 156. It is analogous to a covenant not to sue for a given time, which will not discharge-a surety. — Same authorities.
The books never were, it seems, in the actual possession of Woolworth or his agents. If the books had been actually delivered and received in payment of, or as security for the-judgment, such delivery and receipt would, in the first case,, extinguish the judgment, and a voluntary relinquishment of them would, in the last, discharge the surety (See notes to-2 White & Tudor’s Equity Cases, 373 and 374); yet, to give such effect to a relinquishment, there must have been a parting with something actually in the power and possession of Woolworth or his agents, and not the mere consenting to waive the receipts of a payment, or a security never in his or their actual possession. 2 White & Tudor’s Equity Cases 373, 374.
The ommission of Woolworth’s attorney, therefore, to demand and take possession of said books, is not a discharge of the surety in the judgment.
The discharge by reason of the agreement of February 1, 1856, to receive, during all that month, Gold’s notes, with surety, for an amount far below the face of the judgment, in full satisfaction of it, is still less defensible upon principle. *599 There was no express promise, to stay proceedings upon the judgment for that month, and a want of mutuality is also apparent on the face of the agreement as set forth. Except inferentially, it is not even stated that any efforts were ever made by Gold to obtain such notes, while it is expressly averred, that he wholly failed to procure them. How then can it with any propriety be said, in view of the facts stated in the petition, that Woolworth was, in law or equity, estopped, by this last arrangement, from pursuing his legal remedies upon the judgment, during the month allotted to Gold, within which to procure said notes?
Waiving all objection to the character of the agreement, it is manifest from the facts stated in the petition, that Woolworth never was estopped from suing out execution upon the judgment. Had he sued out execution during February 1856, the chancellor could not have interfered to stay 'proceedings under it, because the state of facts did not exist which would authorize such interference. The petition, in such case, should aver the procuration of the notes, and offer to surrender them to the judgment creditor; the ability to do which is negatived by the petition itself. . There was not, howevever, any express agreement to stay execution during the month, and such an agreement could not be fairly implied from the facts stated. It was an arrangement by which a judgment creditor proposed to receive, from a debtor of doubtful solvency, security for a part only of his claim, in discharge of the whole, if the debtor could procure it. There was no obligation on Gold to make any effort to procure them, and no new or additional remedies were to inure to Woolworth, if he failed or neglected to obtain them. The parties certainly did not regard it as tying the hands of Woolworth for the time. As between them, it was a mere privilege accorded to Gold of discharging the judgment by notes with surety in a less amount, if he could procure them, and a reservation to Woolworth of the right to enforce his judgment if he saw fit to do so, within the same period.
In short we are satisfied that, upon the case made in the petition, the plaintiff below was not entitled to the relief asked, *600 a perpetual injunction against the collection of the judgment from him, and that the demurrer to said petition should have been sustained by the district court.
Another point, and one of much practical importance, has been suggested by the counsel for the plaintiff in error, whctlu er chapter 4 of title 15, of the code of civil procedure, in regard to the rights and remedies of sureties, has not changed the rule heretofore prevailing in this State — that the giving of further time for a definite period, by the creditor to the prin cipal debtor, by a valid agreement made without the assent of the surety, will discharge him from liability. The chapter of the code referred to, confers upon sureties, among other things, the right, at any time after the maturity of the agreement, to maintain an action against their principals, to compel them to discharge the debt or liability for which the sureties are bound, and secures to such sureties all the provisional remedies of title 8 of the code, for arrest, attachment, injunction etc. The reason of the rule discharging the surety in such cases, is said to be, that the creditor, by his agreement, has impaired the rights and remedies of the surety against his principal, and it is insisted, that this reason no longer exists, as under the code, the surety, not being bound by the subsequent contract may, at any time after maturity of the original agreement, proceed against his principal to compel its payment or performance, so that his remedies against his principal not being impaired by the subsequent agreement, the maxim, cessante ratione, etc., should be applied to the rule itself.
We have been referred to the case of Pecey v. Poston, 10 Yerg, (Tenn,) R. 111, as fully sustaining the position. In that case, a judgment creditor had stayed execution against the principal debtor, without the assent of the surety, for a period of six months ; and it was held, that such stay did not discharge the surety, because by a statute of Tennessee, a surety, against whom a judgment may be rendered, may obtain judgment against his principal immediately, for the amount for which he has been so made liable. We do not find it necessary to determine this question in the present case, and therefore leave it for further argument and reflection, when *601 the change, if any, in our legislation, wrought by the code ■and its appropriate effect upon the rule heretofore existing in this State, may be more fully considered.
Judgment reversed, demurrer to petition sustained, and cause remanded for further proceedings.
Scott, C.J., and Sutliff, Gholson and Brinkerhoff, JJ., concurred.